# SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

IN CONSIDERATION of the agreements set forth below, and in order to avoid further time, expense and effort associated with any and all litigation or other proceedings between PAUL HIRNEISEN (hereinafter referred to as "Plaintiff"), on the one hand, and CREMATION SERVICES OF MID-FLORIDA, INC, J.L. LOCKE & COMPANY CREMATION SERVICES, INC., and LARRY LOCKE. (hereinafter, collectively, jointly and severally, "Defendants") on the other hand. All the foregoing Parties enter into this Settlement Agreement and Mutual General Release (the "Agreement") and agree as follows:

1) Background and Intent of the Parties.

   A. Plaintiff asserted claims against Defendants under the Fair Labor Standards Act 29 U.S.C. §201 *et seq*. ("FLSA") in a lawsuit filed in the U.S. District Court for the Middle District of Florida, Case No. 8:18-cv-000041 (the "Dispute")

   B. Without making any admissions or concessions, the Parties desire to settle fully and finally settle and compromise all differences between them, including the claims raised in the Lawsuit.

2) Consideration. In consideration for the promises made herein, including but not limited to, the Plaintiff's release of Defendants, and in full and final settlement and in satisfaction of any and all claims Plaintiff has or had against Defendants in the Lawsuit or otherwise and in full satisfaction of any and all payments due (or may be due) to Plaintiff from Defendants under the FLSA, Defendants will, by not later than September 1, 2018, or 10 business days after the Approval Date, or 10 business days after Plaintiff and Plaintiff's counsel provide W-9 forms to Defendants, whichever is later, deliver to the offices of Plaintiff's Counsel, Noah E. Storch, Celler Legal, 7450 Griffin Road, Suite 230, Davie, Florida 33314, **$7,500.00** (hereinafter, the "Settlement Sum") in three (3) checks as follows:

   a. Check # 1 to "Paul Hirneisen" for $1,400.00 as alleged gross wages (less taxable withholdings at the usual and customary rate; to be reported for tax purposes on a Form W-2);

   b. Check # 2 to "Paul Hirneisen" for $1,400.00 as alleged liquidated damages (without deductions or withholdings, for which Plaintiff will be responsible for all applicable taxes, to be reported for tax purposes on a Form 1099);

   c. Check # 3 to "Celler Legal" for $4,700.00 (for attorneys' fees and costs).

3) <u>Waiver and Mutual General Release</u>.  In consideration for entering into this Agreement, Plaintiff, on behalf of himself self and his descendants, dependents, heirs, executors, administrators, assigns and successors, fully, finally and forever releases, absolves, discharges and gives up any and all claims and rights that Plaintiff may have against the Defendants (on their own behalves and on behalf of each of their successors, heirs and assigns) as well as Defendants' past and present principal, agents, managers, shareholders, parent companies, subsidiaries, divisions and affiliates or related business entities, affiliated constituent partnerships and corporations, directors, officers, administrators, fiduciaries, attorneys, agents, and employees (collectively "Releasees").  This releases, with the sole exception of any charge, claim, or action based upon rights or claims that may arise after the date that Plaintiff signs this Agreement and any pending Workers Compensation Claim filed by Plaintiff referred to below, all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, wages, obligations, debts, expenses, attorneys' fees, costs, damages, judgments, orders and liabilities including, but not limited to, those claims, arising out of Plaintiff's employment with the Company and/or his separation from employment, based in law, equity or otherwise, whether direct or contingent, liquidated or unliquidated, accrued or unaccrued, known or unknown, suspected or unsuspected, actual or potential, asserted or unasserted, patent or latent, matured or unmatured, which Plaintiff now owns or holds, has at any time owned or held, or may in the future discover that he had owned or had held against Releasees. Without limiting the generality of the foregoing, Plaintiff specifically releases any and all claims relating to arising out of or are in any way connected with:

    a. Plaintiff's employment, the terms and conditions of employment, employee benefits, or separation from employment occurring up to the date of this Agreement;

    b. claims of discrimination, harassment, whistle blowing or retaliation in employment (whether based on federal, state or local law, statutory or decisional), including without limitation, all claims under The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.;* , the Older Workers Benefit Protection Act ("OWBPA"); 29 U.S.C. § 621 et seq. (which statute was enacted to, among other things, ensure that individuals over the age of forty who waive their rights under the ADEA do so knowingly and voluntarily); the Genetic Information Nondiscrimination Act of 2008 ("GINA"); the Worker's Adjustment and Retraining Notification Act ("WARN"); Title VII of the Civil Rights Act of 1964, as amended; The Americans With Disabilities Act, ("ADA"), 42 U.S.C. § 12101, *et seq.;* the Americans with Disabilities act Amendments Act of 2008 (ADA Amendments Act"); the Civil Rights Act of 1991, the Reconstruction Era Civil Rights Act of 1866; Sections 1981 through 1988 of Title 42 of the United States Code, as amended, including, but not limited to 42 U.S.C. § 1981; The Equal Pay Act of 1963, as amended, 29 U.S.C. § 206, the Sarbanes-Oxley Act of 2002 ("SOX"); The Fair Labor

Standards Act ("FLSA") 29 U.S.C. § 201 *et seq.;* the Florida Constitution's Minimum Wage Amendment ("FMWA"), The Family Medical Leave Act ("FMLA") 29 U.S.C. § 2601 *et seq.;* the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq* (except for vested benefits which are not affected by this agreement); ; Sections 503 and 504 of the Rehabilitation Act of 1973; the Occupational Safety and Health Act ("OSHA"); The National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); The Florida Civil Rights Act as amended, Fla. Stat. § 760.01 *et. seq.* ("FCRA"); any and all claims/actions which have been or could have been raised under Florida's Worker's Compensation statute (Chapter 440), including but not limited to any claims/actions under the retaliation section of that statute (Fla. Stat. § 440.205); the Florida Public Sector Whistleblower Act (Fla. Stat. § 112.3187 et. seq.); The Health Maintenance Organization Act of 1973; The Labor Management Relations Act of 1947, as amended; Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq.; The Health Maintenance Organization Act of 1973; The Florida Private Sector Whistleblower's Act, Florida. Stat. §§ 448.102-.105, including any claim for wrongful and retaliatory termination in violation of Fla. Stat. § 448.103, Florida Statute § 448.08 for unpaid wages; Florida's Wage Rates Provision, Section 448.07 Florida Statutes; The Florida Minimum Wage Law, as amended; The Florida Equal Pay Act, Section 725.07, Florida Statutes, as amended; Florida Statutory Provision Regarding Retaliation/Discrimination for Filing a Workers Compensation Claim – Fla. Stat. §440.205; Florida AIDS Act – Fla. Stat. §110.1125, §381.00 and §760.50; Florida Discrimination on the Basis of Sickle Cell Trait Law, Fla. Stat. §448.075 et seq.; Florida OSHA – Fla. Stat. Ann. §442.018(2), the Florida Equal Pay Act, any claims under Fla. Stat. § 448.08 for unpaid wages, and waivable rights under the Florida Constitution;

c. claims of breach or violation of public policy, any claims arising under the Federal or any state constitution, wrongful or constructive discharge, retaliation of any kind, retaliatory discharge, breach of contract, promissory estoppel, reliance, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the covenant of good faith and fair dealing, intentional and/or negligent infliction of emotional distress, outrageous conduct, interference with prospective business advantage, negligence, negligent misrepresentation or concealment, negligent hiring, negligent retention, wrongful or bad faith termination, defamation, libel, battery, assault, slander and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated,

3

      compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief;

d. claims for damages of any kind whatsoever, including without limitation compensatory, punitive, treble, liquidated and/or consequential damages;

e. claims under any contract, whether express or implied;

f. claims for violation of any statutory or administrative rules, regulations or codes;

g. claims for attorneys' fees, costs, disbursements, salary, overtime, liquidated damages, bonuses, severance pay, wages, benefits, vacation and/or the like; and/or

h. rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which Plaintiff has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the Effective Date of this Agreement.

(collectively, the "Released Claims").

      The Defendants, on their own behalves and on behalf of each of their successors and assigns, hereby release Plaintiff of all claims based in law, equity or otherwise, whether direct or contingent, liquidated or unliquidated, accrued or unaccrued, known or unknown, suspected or unsuspected, actual or potential, asserted or unasserted, patent or latent, matured or unmatured, which the Defendants now own or hold, have at any time owned or held, or may in the future discover that they had owned or had held against Plaintiff. This Agreement is intended to release any and all claims against Plaintiff as of the date of this Agreement, without exception. This is a full and complete release of all claims, demands, and causes of action raised or that could have been raised by Defendants against Plaintiff.

      4)    <u>Ownership of Claims</u>. Plaintiff represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

      5)    <u>No Admission of Liability</u>. Neither the existence of, nor compliance with, this Agreement shall be construed as an admission by either Party of any wrongdoing. Rather, each Party specifically disclaims any liability to the other for any alleged violation of the rights of the other or any person, or for any alleged violation of any order, law, statute, duty, or contract on the part of any Party including, but not limited to, Defendants employees or agents or related companies or their respective employees or agents.

      6)    <u>Sufficiency of Consideration</u>. Plaintiff agrees that the Settlement Sum is made in exchange, and constitute good and valuable consideration, for his execution of this Agreement and his waiver and release of his claims brought in this Lawsuit or otherwise, including, but not

4

limited to, his FLSA claims. Plaintiff further agrees that the Settlement Sum shall constitute the entire amount of monetary consideration provided to him under this Agreement and that he is not entitled to any further consideration whatsoever from Defendants in exchange for this Agreement, or for any other reason whatsoever, including but not limited to, any other claimed damages, costs, or attorneys' fees in connection with the matters encompassed in this Agreement, the Lawsuit, his FLSA claims, or otherwise.

7) <u>No Future Employment</u>. Plaintiff acknowledges that because of circumstances unique to him, he shall not apply in the future for employment with Defendants or any entity any of the Defendants manage or in which the Defendants have an ownership interest, now or in the future). Plaintiff acknowledges that, if Plaintiff does seek reemployment, failure to hire the Plaintiff, withdrawal of an offer of employment to Plaintiff, or if already employed, termination of Plaintiff's employment without notice or cause will not constitute retaliation or discrimination and Plaintiff will have no legal recourse against the company for such acts.

8) <u>Time to Consider</u>. Plaintiff represents that he has reviewed all aspects of this Agreement and fully understands all the provisions of this Agreement, that Plaintiff understands that in agreeing to this document Plaintiff is releasing Defendants from any and all claims (including FLSA claims) Plaintiff may have against Defendants described herein, that Plaintiff voluntarily agrees to all the terms set forth in this Agreement, that Plaintiff knowingly and willingly intends to be legally bound by the same, that Plaintiff was given the opportunity to consider the terms of this Agreement and discuss them with legal counsel and that the terms were determined through negotiation between counsel for Plaintiff, acting as attorney in fact and law on behalf of Plaintiff, and the attorneys for Defendant. Defendants likewise agree that they have entered in this Agreement voluntarily; that the Agreement is authorized, and that by the signature(s) below, Defendants intend to be bound by this Agreement.

9) <u>Fees and Costs</u>. . In the event of any litigation arising from a breach of thisAgreement, the prevailing party shall be entitled to recover any remedy or right it or he may have at law or in equity, including but not limited to, his/its reasonable attorneys' fees and costs.

10) <u>Court Approval</u>. This Agreement shall not be effective and binding against any party until it is approved by the Court with jurisdiction over the Lawsuit. The "Approval Date" is defined as the date on which the Court enters an order indicating approval of this Agreement.

11) <u>Covenant Not to Sue</u>. The Parties each hereby covenant that, with the exception of actions or suits based upon breaches of the terms of this Agreement, they will refrain from commencing any action or suit, or prosecuting any pending action or suit, in law or in equity, against the other on account of any action or cause of action which now exists or that have been or could have been raised in connection with the Dispute, known or unknown, or any matters related thereto whatsoever.

12) <u>Non-Interference</u>. Nothing in this Agreement shall interfere with Plaintiff's right to file a charge, or cooperate or participate in an investigation or proceeding conducted by any federal or state regulatory or law enforcement agency. However, the consideration provided to Plaintiff in this Agreement shall be the sole relief provided to Plaintiff for the claims that are

released by Plaintiff herein and Plaintiff will not be entitled to recover and agrees to waive any monetary benefits or recovery against Defendants in connection with any such claim, charge, or proceeding without regard to who has brought such complaint or charge.

13) <u>Neutral Response to Employment Inquiries</u>. Defendants agree that Defendants will respond to inquiries from prospective employers regarding Plaintiff by providing only Plaintiff's dates of employment and positions held.

14) <u>No representation</u>.  The Parties hereto represent and acknowledge that, in executing this Agreement, they do not rely and have not relied upon any representation or statement made by any of the Parties or by any of the Parties' agents, attorneys, or representatives with regard to the subject matter, basis, or effect of this Agreement or otherwise, other than those specifically stated in this written Agreement.

15) <u>Severable Provisions</u>.  Should any provision of this Agreement be declared or be determined by any court of competent jurisdiction to be wholly or partially illegal, invalid, or unenforceable, the legality, validity, and enforceability of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal, unenforceable, or invalid part, term, or provision shall be deemed not to be a part of this Agreement. However, notwithstanding, in the event that any court refuses to enforce the release of claims under the Fair Labor Standards Act for any reason, the entire Agreement shall be deemed null and void, and any consideration paid by Defendants in accordance with this Agreement shall be immediately payable to Defendants by Plaintiff.

16) <u>Headings</u>.  The headings contained in the Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

17) <u>Applicable Law</u>.  This Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against any of the parties hereto.  This Agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of Florida without regard to principles of conflict of law.

18) <u>Construction of Agreement</u>.  This Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against any of the parties hereto.  Each Party has had the opportunity to cooperate in the drafting and preparation of the Agreement.  Hence, in any construction to be made of the Agreement, the same shall not be construed against any Party on the basis that the Party was the drafter.

19) <u>Signatures</u>.   The Agreement may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original.  Photographic, faxed or scanned copies of such signed counterparts may be used in lieu of the originals for any purpose.  This agreement may be signed electronically.

20) <u>Execution of Necessary Documents</u>. Return of Property.  Each Party shall, upon the request of the other, execute and re-execute, acknowledge and deliver this Agreement and any and all papers or documents or other instruments, as may be reasonably necessary to

implement the terms hereof with any formalities as may be required and, otherwise, shall cooperate to fulfill the terms hereof and enable the other Party to effectuate any of the provisions of this Agreement.

21) <u>No Prevailing Party For Purposes of this Dispute</u>.  None of the Parties shall be considered a prevailing party by virtue of this Agreement.

22) <u>No Waiver/All Rights Are Cumulative</u>.  No waiver of any breach of any term or provision of the Agreement shall be construed to be, nor shall be deemed, a waiver of any other breach of the Agreement.  No waiver shall be binding unless it is made in writing and signed by the party waiving the breach.  All rights are cumulative.

23) <u>Parties' Acknowledgment</u>.  The Parties acknowledge that the terms of this Agreement are contractual and not a mere recital, and that no representation, promise or inducement has been made other than as set forth in this Agreement, and that each Party enters into this Agreement without reliance upon any other representation, promise or inducement not set forth herein.  The Parties further acknowledge and represent that each assumes the risk for any mistake of fact now known or unknown, and that he/it understands and acknowledges the significance and consequences of this Agreement and represents that its terms are fully understood and voluntarily accepted.

BY YOUR SIGNATURE, YOU AGREE TO THE TERMS SET FORTH ABOVE.

Plaintiff:

_____        _____
Date                                                                Paul Hirneisen

Cremation Services of Mid-Florida, Inc.

_____        _____
Date                                                                Larry Locke, President

J.L. Locke and Company Cremation Services, Inc.

_____        _____
Date                                                                Larry Locke, President

_____        _____
Date                                                                Larry Locke, Individually